IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

VICKIE C.,

                              Plaintiff,

            v.                                      Civil Action No.
                                                    8:20-CV-1452 (FJS/DEP)

COMMISSIONER OF SOCIAL SECURITY

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF KENNETH HILLER    JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue, Suite 1A    KENNETH R. HILLER, ESQ.
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.           NATASHA OELTJEN, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

        Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied.  The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  For the reasons set forth below, I recommend a finding that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in March of 1966, and is currently fifty-six years of age.  She was forty-nine years old at her alleged onset date of disability – August 15, 2015 – and fifty-two years old the time of her application for benefits in August of 2018.  Plaintiff stands five feet and seven inches in height, and weighed approximately one hundred and eighty pounds at the relevant times.  Plaintiff lives in a house with her adult daughter and her daughter's boyfriend.

Plaintiff reports having graduated from high school.  She obtained training as a certified nursing assistant ("CNA") and primarily worked as a CNA, but left that job when she went to prison for a driving while intoxicated

conviction.

Plaintiff alleges that she suffers from various physical conditions, including seizures, lower back pain, degenerative disc disease, effects of gastric bypass surgery, a cyst on her shoulder, upper back and neck pain, migraines, asthma, and chronic obstructive pulmonary disease ("COPD"). As is relevant to her applications, plaintiff primarily treated for these impairments with Dr. Kejian Tang from Massena Neurology, sources at the Champlain Spine and Pain Management Center, and providers at the Alice Hyde Medical Center. Plaintiff additionally alleges that she suffers from mental symptoms including depression and emotional reactivity, although she did not receive specific treatment for these impairments throughout the relevant period.

Plaintiff reports that her first seizure occurred in 2006 and was precipitated by flashing light, but notes that she has not had a seizure since she left prison in 2015. She believes that her seizure disorder nevertheless still puts her at risk for falling.

Plaintiff suffers from neck and back pain caused by degenerative disc disease, making it difficult for her to bend, stoop, twist, and work overhead. She reports that she can sit for a half hour before needing to stand up or walk, can walk for fifteen or twenty minutes, can stand for thirty minutes,

and can lift five pounds.  She has no difficulty using her hands and fingers.

Plaintiff had recently suffered an ankle fracture around the time of the administrative hearing, and as a result was using a walker to ambulate at that time.  Plaintiff reports that her pain is generally around an eight out of ten in severity.  She takes gabapentin, which relieves her pain enough that she can bear it, and she uses a gel for pain relief.  Plaintiff also takes amitriptyline for her migraines and to help her sleep.  She has reported no side effects from her medications.

Plaintiff testified at the administrative hearing that she is able to cook for herself, can clean her house and mop although those activities cause back pain, can do her own laundry, can sometimes shop, and can occasionally do outdoor work such as removing snow, although the snow is difficult to lift.  She does not have a driver's license due to her history of convictions for driving while intoxicated, so her mother drives her where she needs to go.  Plaintiff also enjoys spending time socializing with friends and family.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Titles II and XVI of the Social Security Act, respectively, on August 15, 2018.  In support of her

applications, she claimed to be disabled due to seizures, back pain, degenerative disc disease, vision loss, gastric bypass surgery, a cyst on her shoulder, depression, COPD, and gastroesophageal reflex disorder.

A hearing was conducted on November 14, 2019, by Administrative Law Judge ("ALJ") Bruce S. Fein, to address plaintiff's application. Following that hearing, ALJ Fein issued an unfavorable decision on January 17, 2020.  That opinion became a final determination of the agency on November 6, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In his decision, ALJ Fein applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff did not engage in substantial gainful activity during the relevant period.  The ALJ next found at step two that plaintiff suffers from medically determinable impairments that impose more than minimal limitations on her ability to perform basic work functions, including a spine impairment, a seizure disorder, and posttraumatic stress disorder.  The ALJ further found, however, that plaintiff's additional alleged conditions, including residual effects of gastric bypass surgery, hypertension, asthma, migraines, hearing

loss, right ankle fracture, COPD, and history of alcohol abuse, do not rise to the level of severe impairments.

At step three, ALJ Fein examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering Listings 1.04, 11.02, and 12.15.

ALJ Fein next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of work at the light exertional level, but with the following additional limitations:

> the claimant may never climb ladders, ropes, or scaffolds. The claimant may occasionally perform all other postural maneuvers. The claimant must avoid concentrated exposure to operational control of moving machinery, unprotected heights, hazardous machinery, extreme temperatures, fumes, odors, gases, dust, and poorly ventilated areas. The claimant is limited to simple, routine, repetitive tasks. She may frequently interact with coworkers, or supervisors, and occasionally interact with the public.

ALJ Fein went on at step four to conclude that plaintiff is unable to perform her past relevant work.  Proceeding to step five, the ALJ concluded that the nonexertional limitations included in the RFC do not significantly

erode the occupational base of light work and therefore a finding of "not disabled" is directed by Medical-Vocational Guidelines ("Grids") Rules 202.21 and 202.14.  Based upon these findings, ALJ Fein concluded that plaintiff was not disabled at the relevant times.

C.   This Action

Plaintiff commenced this action on November 25, 2020.[1]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ erred (1) in failing to obtain testimony from a vocational expert based on the existence of significant nonexertional limitations in the RFC that preclude direct application of the Grids; (2) in his findings related to the opinions from consultative examiners Dr. Nader Wassaf and Dr. Brett Hartman; and (3) when assessing plaintiff's subjective reports.

Oral argument was conducted in this matter, by telephone, on April 27, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

---

[1]     This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.*

8

*Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

> exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

1.    The ALJ's Assessment of the Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the opinion evidence of record, arguing that (1) the ALJ erred when assessing the opinion from consultative examiner Dr. Nader Wassef by (a) failing to explain why he declined to account in the RFC for Dr. Wassaf's opined limitations in her ability to operate foot controls, push, pull, and handle, and (b) rejecting,

11

without sufficient explanation, the extent of limitations in her ability to be

exposed to environmental conditions and hazards that Dr. Wassaf opined;

and (2) the ALJ erred when assessing the opinion from consultative

examiner Dr. Brett Hartman by (a) failing to acknowledge Dr. Hartman's

opinion that plaintiff has moderate-to-marked difficulties regulating her

emotions, asserting that the RFC limitation to simple, routine, repetitive

tasks does not fully account for that limitation, (b) failing to explain why he

discounted Dr. Hartman's opinion regarding interaction with others, and (c)

dismissing portions of his opinion based on the fact that terms like

"moderate" are vague.  Dkt. No. 14, at 15-20.

Because plaintiff's applications were filed after March 27, 2017, this

case is subject to the amended regulations regarding opinion evidence.

Under those regulations, the Commissioner "will not defer or give any

specific evidentiary weight, including controlling weight, to any medical

opinion(s), . . . including those from your medical sources," but rather will

consider whether those opinions are persuasive by primarily considering

whether the opinions are supported by and consistent with the record in the

case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL

168819, at *5853 (stating that, in enacting the new regulations, the agency

was explicitly "not retaining the treating source rule").  An ALJ must

12

articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[2] and consistency[3] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

### a.   Dr. Hartman's Opinion

In his examination report, Dr. Brett Hartman opined that plaintiff is able to remember, understand and apply simple directions, maintain

---

[2]   On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[3]   On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

personal hygiene, and maintain awareness of hazards, but has mild difficulty sustaining an ordinary routine, moderate difficulties using reason and judgment, interacting with others, and sustaining concentration, and moderate-to-marked difficulties in understanding, remembering and applying complex directions and regulating her emotions.  Administrative Transcript ("AT") at 479.[4]  The ALJ concluded that Dr. Hartman's opinion is "somewhat persuasive," finding that his assessment that plaintiff can follow simple directions, but would have moderate to marked difficulty following complex instructions, and would have moderate difficulty using reasoning and judgment, interacting with others, and sustaining concentration was both "reasonably supported by the results of the consultative examination," and "reasonably consistent with the record as a whole," but that his use of "terms such as 'moderate difficulty' do not clearly correspond to specific functional restrictions, which diminishes the usefulness of this opinion in assessing the claimant's residual functional capacity."  AT 17.

Plaintiff first argues that the ALJ erred because he failed to acknowledge Dr. Hartman's opinion that plaintiff has moderate-to-marked difficulty regulating her emotions, and failed to either explain why that

---

[4]    The Administrative Transcript is found at Dkt. No. 12, and will be referred in this decision as "AT __."

limitation was rejected or to incorporate it into his RFC finding. Dkt. No. 14, at 17. It is true that the ALJ did not explicitly discuss this limitation in his decision. The ALJ admittedly found this opinion to be only "somewhat persuasive," which indicates that he found that parts of that opinion were not persuasive. AT 17.

However, if the ALJ did reject this limitation specifically, it is not clear what grounds he relied on for doing so. Notably, although the ALJ explained, in broad terms, that the opinion is "reasonably supported" by Dr. Hartman's examination such as an inability to complete a serial sevens test, and "reasonably consistent" with the record as a whole, such as her reported difficulty getting along with friends and family, such explanation does not suggest why he apparently found the opined moderate-to-marked limitation related to regulating emotions to be unsupported or inconsistent with the other evidence. The ALJ notably does not point to any other opinion evidence to support a rejection of that limitation, and his discussion of the evidence provides no clear indication of his resolution as to that limitation. The ALJ's sparse and generalized discussion of the mental evidence, citing only a lack of specialized treatment, denial of mental symptoms at times, and one notation that she was observed to be pleasant, courteous and cooperative simply does not suffice to explain the

15

ALJ's basis for rejecting such limitation.  AT. 14, 17.

The only other reason the ALJ provides to explain his reliance on Dr. Hartman's opinion is that "terms such as 'moderate difficulty' do not clearly correspond to specific functional restrictions, which diminishes the usefulness of this opinion in assessing the claimant's residual functional capacity."  AT 17.  This reason cannot mitigate the ALJ's failure to explain his findings as to the relevant limitation.  The ALJ appears to have been sufficiently able to translate those terms into functional limitations related to the other portions of the opinion that he found to be supported, and did not express any difficulty interpreting the term "moderate" related to the physical consultative examiner's opinion.  If the ALJ found that the evidence was insufficient to interpret the "moderate-to-marked" limitation in this area specifically, he was required to explain as much.  *See Jeffery A. v. Comm'r of Soc. Sec.*, 18-CV-1473, 2020 WL 1234867, at *7-8 (N.D.N.Y. Mar. 13, 2020) (Hummel, M.J.) (recognizing that use of terms like moderate to marked do not necessarily render an opinion too vague where there is other medical evidence in addition to the opinion using those terms, such as where the doctor has performed a thorough examination).

Although the record is admittedly sparse regarding plaintiff's mental impairments, it is not the court's function to supply reasons to bolster the

ALJ's decision where the ALJ has failed to provide explanation.  The ALJ's complete failure to show that he even considered the relevant moderate-to-marked limitation regarding regulating emotions prevents meaningful review of his findings.

This failure to explain the implicit rejection of a limitation that is arguably more restrictive than the RFC finding is compounded by the ALJ's complete failure to acknowledge or provide any analysis of the prior administrative findings of the nonexamining state agency psychiatric consultants.  The ALJ did not discuss the prior administrative findings of the mental nonexamining sources other than to note their conclusion that there was insufficient evidence to assess functioning during the specific period relevant to that application.  However, those sources found that there was insufficient evidence to assess disability only as to plaintiff's Title II application; as to her Title XVI application, those sources did provide functional findings.  AT 113-15, 124, 135-36, 150-51.  The ALJ did not overtly indicate that he found the functional opinions provided by these sources in the Title XVI application to be unpersuasive.  Although the findings of those sources are generally consistent with the RFC, and therefore the failure to discuss how persuasive the ALJ found them is, in the abstract, harmless error, the ALJ's failure to provide reasons for

essentially adopting those opinions over Dr. Hartman's opinion as to the limitation related to regulating emotions in particular is not harmless error, given that the ALJ has not provided any sufficient explanation for even implicitly finding those opinions more persuasive than the opinion of Dr. Hartman in this respect. *See* 20 C.F.R. §§ 404.1520c, 416.920c. In sum, the ALJ's failure to both (a) adequately explain the basis for rejecting Dr. Hartman's opinion regarding emotional regulation and (b) explain his consideration of the nonexamining physicians' opinion in terms of why he did or did not find those opinions more persuasive than Dr. Hartman's opinion, particularly regarding emotional regulation abilities, ignores the ALJ's duty under the regulations and prevents meaningful review of his findings.

Based on the foregoing, I recommend that this matter be remanded for further appropriate assessment of the opinion evidence related to plaintiff's mental functioning.

b.    a.    Dr. Wassaf's Opinion

In his consultative report, Dr. Nader Wassef opined that plaintiff has moderate limitations in her abilities to stand, walk, climb stairs, descend stairs, bend, squat, lift, operate foot controls, push, pull, and handle, and that she should not be exposed to extremes in temperatures, second-hand

smoke, perfumes, chemicals, or other respiratory irritants, should not drive cars or trucks, should not operate heavy machinery, should not do high altitude activities, and should not dive or swim.  AT 486.  The ALJ found Dr. Wassaf's opinion to be "partially persuasive," explaining that it "is somewhat supported by the results of the consultative examination, including the claimant's five out of five strength," but that the extent of the opined environmental limitations is "inconsistent with the fact that the claimant has not had a seizure since 2015."  AT 17.

Regarding the issue of environmental concerns, the ALJ clearly explained that he was rejecting the extent of those limitations opined by Dr. Wassaf because the fact that plaintiff had not had a seizure since 2015 suggested that complete avoidance of such conditions was not warranted. AT 17.  Plaintiff does not challenge the ALJ's finding that her seizures have been controlled with medication,[5] but argues instead that the ALJ failed to

---

[5]     To the extent plaintiff argues that "the ALJ was not qualified to reject Dr. Wassaf's opinion based on his own judgment of how likely Plaintiff was to have another seizure and what environmental factors might trigger one," that contention should be rejected.  First, Dr. Wassaf does not provide any opinion or assessment of how likely plaintiff is to suffer another seizure, or opine that the conditions he states should be avoided are likely to trigger a seizure.  AT 482-86.  Dr. Wassaf notably does not even indicate that plaintiff reported what had triggered her seizures in the past, only that she was diagnosed six or seven years ago and has not had any recent activity.  AT 482.  Further, plaintiff has not pointed to any evidence in the record to support that the ALJ's interpretation of the evidence as a whole was erroneous or contrary to the assessment of medical sources.  Although the medical evidence describes that plaintiff's seizures were caused by bright lights in the past, it also clearly documents that she has not had seizures while being compliant with her medication.  There is simply no basis for

account for the fact that Dr. Wassaf based his opinion not only on seizures, but also on her history of asthma and chronic obstructive pulmonary disease.  Dkt. No. 14, at 16.  Although it is true that Dr. Wassaf lists asthma as a diagnosis in his report, he observed normal breathing and normal results from spirometry testing.  AT 485.  He also noted that, according to the plaintiff, her asthma is precipitated by weather changes and that use of an albuterol nebulizer helps, as well as that she smokes both a half-pack of cigarettes and marijuana daily.  AT 482, 484.  Plaintiff cites no evidence, other than the fact that pulmonary conditions exist, to support her argument; a mere diagnosis of a condition, however, does not substantiate that such condition imposes any specific functional restrictions or is disabling.  *See Christine M. v. Comm'r of Soc. Sec.*, 20-CV-1226, 2022 WL 130900, at *8 (W.D.N.Y. Jan. 14, 2022) (finding no error where the ALJ found the plaintiff's migraines to be a severe impairment but declined to include additional limitations in the RFC related to migraines because the record did not support such additional limitations); *see also Tammie S. v. Berryhill*, 18-CV-0174, 2019 WL 859263, at *9 (N.D.N.Y. Feb. 22, 2019) (Hummel, M.J.) (noting that, in the context of assessing severity of an

---

plaintiff's argument that the ALJ inappropriately substituted his lay interpretation for a contrary interpretation by Dr. Wassaf.  Rather, the ALJ made a reasoned assessment, based on all the evidence, that is supported by substantial evidence.

impairment, "[t]he mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe [i.e., that it significantly limits a claimant's ability to complete basic work activities]"); *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 581 (S.D.N.Y. 2018) (noting that "[a] mere diagnosis, however, does not necessarily support a finding of limitations in a claimant's RFC"). Moreover, the ALJ expressly considered plaintiff's asthma and COPD and found them to be nonsevere based on normal spirometry testing results. AT 13. Although the ALJ failed to discuss the possible pulmonary basis for certain environmental restrictions, any such error should be found to be harmless, given that the ALJ's other findings and the record as a whole, including Dr. Wassaf's own examination report, support no greater limitations than those included in the RFC determination.

Turning to plaintiff's argument that the ALJ failed to explain why he choose not to include the moderate limitations in operating foot controls, pushing, pulling, and handling in particular, it is important to bear in mind that the ALJ found Dr. Wassaf's opinion only partially persuasive. AT 17. The ALJ was not required to adopt every limitation Dr. Wassaf opined. *See Janet L.K. v. Saul*, 20-CV-0725, 2021 WL 2592899, at *4 (N.D.N.Y. June 24, 2021) (Suddaby, C.J.) (noting that "[t]he ALJ need not adopt opinions in

their entirety, but may instead adopt only those portions that she finds to be consistent with the record as a whole") (collecting cases).  The ALJ indeed found that his opinion was only "somewhat supported" by his own examination.  The ALJ also did account for the limitation in pushing and pulling by limiting plaintiff to light work, as "moderate" limitations have generally been interpreted as being consistent with light work.  *See Michelle B. v. Comm'r of Soc. Sec.*, 20-CV-0168, 2022 WL 130898, at *3 (W.D.N.Y. Jan 14, 2022) (noting that "moderate physical limitations are consistent with light work," and finding specifically that an opinion that the plaintiff was moderately limited in pushing and pulling was consistent with the RFC ability to push and pull within the definition of light work); *April B. v. Saul*, 18-CV-0682, 2019 WL 4736243, at *5 (N.D.N.Y. Sept. 27, 2019) (Stewart, M.J.) (finding that moderate limitations in physical exertional abilities are generally consistent with an ability to perform light work).

The ALJ's assessment, or lack thereof, of plaintiff's ability to handle or operate foot controls, however, is a different matter.  Even if the ALJ was not obligated to adopt the entirety of Dr. Wassaf's opinion, he was still required to explain the reasons behind his acceptance or rejection of various portions of the opinion.  Although the ALJ did note that Dr. Wassaf opined a moderate limitation in handling, he then found that the opinion is

"somewhat supported by the results of the consultative examination, including the claimant's five out of five strength."  AT 17.  It is therefore not wholly clear from the ALJ's explanation whether the ALJ intended to find this limitation supported by the examination or not.[6]  Further, the ALJ's decision is silent with respect to the opined limitation regarding use of foot controls in the decision, and fails to provide any explanation as to whether or why that limitation was found to be persuasive, other than a generic statement that the opinion was overall somewhat supported by Dr. Wassaf's examination.  This is potentially problematic, given that Dr. Wassaf observed in his examination that plaintiff was unable to stand or walk on her heels and toes, unable to squat, had discomfort during examination of her knees and back and displayed 1+ pitting edema in her lower legs.  AT 484-85.  It is therefore not clear that the ALJ's own provided explanation is supported by substantial evidence as to this limitation. Moreover, the ALJ has completely failed to assess whether Dr. Wassaf's opinion is consistent with the other evidence in the record despite being required to under the applicable regulations.  20 C.F.R. §§ 404.1520c,

---

[6]    I acknowledge that it is not clear whether the ALJ's errors as to the handling limitation are harmful due to the lack of objective evidence supporting difficulties, and plaintiff's own statement at the hearing that she had no difficulties handling and fingering.  AT 66.

416.920c.  I cannot say that the medical record, which is particularly

lengthy in this case at nearly one thousand pages of treatment records, is

so devoid of any support for the additional opined limitations, particularly

related to use of foot controls, as to render harmless the ALJ's failure to

comply with the articulation requirements of 20 C.F.R. §§ 404.1520c and

416.920c.[7]

Lastly, plaintiff argues that Dr. Wassaf's opinion regarding the need

to completely avoid machinery and heights was not properly rejected

because it is consistent with the opinion from state agency nonexamining

physician Dr. R. Reynolds.  In February of 2019, Dr. Reynolds opined that

plaintiff can perform a range of light work with occasional climbing,

stooping, kneeling, crouching and crawling, avoidance of concentrated

exposure to extreme temperatures, wetness, humidity, fumes, odors, dusts,

gases, and poor ventilation, and avoidance of even moderate exposure to

---

[7]      I note that, although the relevant authority suggests that use of foot controls is
more common in seated light work, and that relatively few unskilled light jobs are
performed in the seated position, I recommend a finding that such statements are not
sufficient to render harmless the error based on the failure to explain the resolution of
the limitations for use of foot controls in particular.  *See* SSR 83-10.  This statement is
simply too vague to provide sufficient proof that the ALJ would have inevitably found
that this limitation, if accepted, would not have altered the step five finding, particularly
given his choice not to elicit testimony from a vocational expert.  *See Michael C. v.
Comm'r of Soc. Sec.*, 18-CV-1115, 2019 WL 7293683, at *3 (N.D.N.Y. Dec. 30, 2019)
(Baxter, M.J.) (noting that "an ALJ's errors in weighing the evidence or applying the law
may be considered harmless where proper consideration of the evidence or law would
not have changed the outcome").

hazards such as machinery and heights.[8]  AT 110-11.

To the extent plaintiff argues that the opinion evidence is "uncontradicted" with respect to this issue such that the ALJ was required to provide an overwhelmingly compelling reason to find differently, that argument should be rejected.  Dr. Reynolds did not opine, as Dr. Wassaf did, that plaintiff must avoid all exposure to hazards; rather, he found that plaintiff should have less than moderate exposure to such hazards.  The opinion evidence is therefore not unanimously in agreement with Dr. Wassaf's conclusion, and the ALJ was therefore not required to provide an overwhelmingly compelling reason for rejecting Dr. Wassaf's opined limitation.  *See Giddings v. Astrue*, 333 F. App'x  649, 652 (2d Cir. 2009) (noting that a opposite conclusion by a non-physician must be overwhelmingly compelling only where the medical opinion(s) in question are "uncontradicted").

Nonetheless, the fact that Dr. Wassaf's opinion is contradicted does not mean that the ALJ's findings as to this limitation are supported by substantial evidence.  I note that, although plaintiff has not argued as much, the ALJ does not specifically address or explain how persuasive he

---

[8]     This finding was reiterated on reconsideration by Dr. S. Siddiqui in February of 2019.  AT 138-40.

found the functional opinions of Dr. Reynolds and Dr. Siddiqui in his decision.  As was discussed previously regarding the mental nonexamining opinions, the ALJ only acknowledged the sources' finding on her Title II application that there was insufficient evidence to assess disability, but failed to discuss those sources' functional opinions on her Title XVI application.  AT 110-12, 122, 137-40, 140-50.  The RFC ultimately adopted by the ALJ is admittedly consistent with most of the limitations opined by Dr. Reynolds and Dr. Siddiqui.  To the extent the ALJ incorporated the same or greater limitations as those expressed by the nonexamining sources, any error in failing to specifically articulate his findings related to those opinions is likely harmless.  *See Sarah C. v. Comm'r of Soc. Sec.*, 19-CV-1431, 2021 WL 1175072, at *19 (N.D.N.Y. Mar. 29, 2021) (Scullin, J.) (finding harmless error in failing to properly weigh opinion because the opinion was consistent with the ALJ's RFC and therefore proper consideration would not have resulted in a different outcome) (collecting cases).

However, Dr. Reynolds and Dr. Siddiqui opined a limitation related to exposure to hazards that is more restrictive than that which was ultimately adopted by the ALJ.  Both sources explained that their assessment of environmental and hazard limitations was based on plaintiff's asthma,

COPD, and seizure disorder.  In his decision, the ALJ discussed that plaintiff continues to take Keppra to prevent any further seizures, that she has not has a seizure since 2015, and that her seizure disorder has been well controlled with medication.  AT 16.  He concluded that, "[w]hile the risk of another episode supports the environmental limitations above in order to avoid accidents, the fact that this impairment has been well controlled since 2015 indicates that it causes no greater limitations."  *Id.*

Although the ALJ provided a fairly clear explanation as to the basis for his finding related to plaintiff's ability to have concentrated exposure to hazards, the ALJ's failure to articulate how persuasive he found the opinions from the nonexamining sources renders meaningful review of that limitation difficult, if not impossible.  In particular, although the ALJ clearly explained why the fact that seizures had been controlled since 2015 did not support the need for total avoidance of hazards as opined by Dr. Wassaf, it is not entirely certain why the ALJ found she could have concentrated exposure specifically, particularly in the presence of the opinions from the nonexamining state agency physicians who opined a somewhat more restricted level of exposure.  Those physicians also specifically recognized the fact that plaintiff had not had any recent seizures when explaining their opinions.  AT 111-12, 139.  The only material difference in the record

related to plaintiff's seizure disorder between the time of the state agency physician opinions and the ALJ's decision is the fact that even more time had passed without a seizure.  Without an explanation from the ALJ as to why the state agency physicians' opinions are inconsistent with the record, meaningful review cannot be conducted of the ALJ's limitation for "concentrated exposure" to hazards.

Because the ALJ committed a number of errors related to weighing Dr. Wassaf's opinion, and inasmuch as I have already recommended that this matter be remanded to address errors related to evaluation of Dr. Hartman's opinion, I also recommend that this matter be remanded for further, proper consideration of the persuasiveness of the opinions of Dr. Wassaf, Dr. Reynolds, and Dr. Siddiqui.

2.    Plaintiff's Remaining Arguments

Because the errors identified above merit remand that may well alter the ALJ's other conclusions, little purpose would be served by analyzing the remainder of plaintiff's contentions regarding the ALJ's assessment of her subjective reports and the ALJ's findings at step five.

IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I

recommend a finding that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 17) be DENIED, the Commissioner's decision be VACATED, and this matter be remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    May 18, 2022
          Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge